UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:20-CR-51-REW-HAI |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| RENE LAMAR PEREZ, ) | |
| ) | |
| Defendant. ) | |

*** *** *** ***

On referral from District Judge Wier (D.E. 5), the Court considers reported violations of supervised release conditions by Defendant Rene Lamar Perez.

Senior District Judge Hayden Head of the Southern District of Texas entered Judgment against Defendant in January 2011 for one count of possession with intent to distribute 167.97 kilograms of marijuana. D.E.1-3. Defendant was sentenced to 137 months of imprisonment followed by ten years of supervised release, but this was later amended down to 91 months' imprisonment. D.E. 1-3, 1-4. Defendant was released on April 14, 2017. On May 9, 2017, Perez was referred to Cumberland River Behavioral Health, in Hyden, Kentucky, for outpatient substance abuse counseling; he successfully completed the program on May 11, 2018. Defendant's supervision was transferred to this District in September 2020. D.E. 1.

**I.**

On April 12, 2022, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges two violations. According to the Report, on April 1, 2022, Defendant produced a urine sample that tested positive, upon instant testing, for methamphetamine and amphetamine. Defendant

"denied any drug use." On April 11, Alere Toxicology provided laboratory results indicating the sample was positive for methamphetamine.

Based on these facts, Violation #1 charges a violation of the condition that Defendant "shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician." This is a Grade C violation.

Violation #2 charges a violation of the condition that Defendant must not commit another federal, state, or local crime and the condition that he not unlawfully possess a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's use and possession of methamphetamine, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

Defendant was arrested and the Court conducted an initial appearance pursuant to Rule 32.1 on April 18, 2022. D.E. 6. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for interim detention; Defendant did not request release. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on May 2, 2022, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 9. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation as described in the Report. He admitted he had used methamphetamine and said should have been truthful with his probation officer. The United States thus established Violations #1 and #2 under the standard of section 3583(e).

**II.**

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to possession with intent to distribute 100 kilograms or more of marijuana, a Class B felony. *See* 21 U.S.C. § 846. Such a conviction carries a three-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violation #1 and a Grade B violation for Violation #2. Given Defendant's criminal history category of VI (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is 21 to 27 months. USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's drug trafficking conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

### III.

At the final hearing, both parties recommended penalties below the Guidelines Range. The government asked for fourteen months' incarceration, followed by two years of supervision. The defense requested two months of imprisonment, plus an unspecified period of home incarceration.

According to the government, Defendant's five-year track record of successful supervision was "an oddity" that warranted a substantial downward departure. For someone to succeed for five years and *then* violate is "unique." According to the government, two years of supervision would suffice to reveal whether Defendant's meth use was a one-time aberration or the beginning of a serious new drug problem. The government observed that Defendant has no history of meth use. His PSR shows alcohol use, and his prior drug convictions are associated with marijuana. The additional supervision would also provide protection to the public.

The government observed that Defendant's high Guidelines Range is driven by his criminal history. But that history is dated. And the underlying conviction (which included violent conduct in the form of a high-speed vehicle chase) occurred over ten years ago.

The defense tendered, and the Court fully reviewed, four letters of support supplied by the mother of Defendants' children. D.E. 10.

According to the defense, Defendant had built up a good life over the past five years. He now has two young children, a mortgage, and car payments. He had been a good worker. The defense argued that incarceration would jeopardize this family's structure. Defendant had simply slipped up. Defendant agrees he should have admitted his drug use, but he panicked. Defendant is willing to drug test every day to avoid a sentence that would lead to losing the house and vehicles.

Defendant addressed the Court. He said he should have admitted his drug use right away. He said he is tired of being bad. He is not a criminal anymore. He used to do a lot of bad things, but back then he had nothing to live for. Now, he cares about his family. He wants to work every day and hold his kids every night. He fears his family will be destroyed if he is incarcerated for a long time.

## IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance. Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for treatment as an alternative to incarceration.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant led

5

Sheriff's Deputies on a high-speed chase while transporting 33 bundles of marijuana in his truck. At the time, he was a daily user of marijuana and cocaine. There is not much connection between the revocation conduct and the egregious circumstances of the underlying offense.

The Court next considers Defendant's history and characteristics and the need to deter criminal conduct and protect the public. Defendant has a criminal history category of VI, which drives his high Guidelines Range. Defendant's history suggests he has the potential to pose a risk of danger to the public. But that criminal history is dated and is counterbalanced by the previous five years, where Defendant succeeded under supervision and built a new life for himself. Defendant is not the same person who was sentenced in 2011.

Another factor focuses on opportunities for education and treatment. Defendant has received drug addiction treatment in the past. His recent methamphetamine use appears to be a fluke, and the Court hopes it is. The Court stressed to Defendant the danger of contemporary meth and fentanyl. If needed, Defendant can be re-evaluated for drug addiction treatment upon release.

The Guidelines suggest that the *primary* wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, Defendant's breach of trust is aggravated by his initial dishonesty. When caught with a positive result for methamphetamine, Defendant denied all drug use. Although the extent of his previous success

on supervision is commendable, the Court cannot overlook Defendant's attempt to thwart accountability with his probation officer.  Additionally, he has no history of meth abuse, so turning to a new and dangerous drug after more than thirty years since his first felony drug conviction is very concerning.  Notably, that conviction was in this District and, following imprisonment, Defendant's release was revoked based on a cocaine positive.  Defendant was well aware of the importance of strict compliance with the conditions of his release.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'"  *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)).  The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'"  *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

Here, both sides agree that Defendant's Rage, driven by his criminal history, is high in relation to the severity of his violation.  Both sides agree that a downward departure is warranted due to Defendant's five-year track record of success on supervision.  Revocation is mandatory, and the sentence should be sufficient to addresses Defendant's initial dishonesty and provide deterrence and protection for the public.  The Court finds that a revocation sentence of twelve months and a day is sufficient, but not greater than necessary, to address the relevant sentencing factors.  In the Court's view, any lesser penalty would not sufficiently reflect the breach of trust and dishonesty present.  This penalty will also provide an incentive to earn good-time credit.

The Court also agrees that a two-year supervision period will reveal whether Defendant still has any lingering drug issues.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty both violations.
2. Revocation with a term of imprisonment of twelve months and a day, followed by 24 months of supervised release on the conditions previously imposed.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Wier's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 3rd day of May, 2022.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge