UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:20-CR-51-REW-HAI |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| RENE LAMAR PEREZ, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Wier (D.E. 17), the Court considers reported violations of supervised release conditions by Defendant Rene Lamar Perez.  This is his second revocation.

**I.**

Senior District Judge Hayden Head of the Southern District of Texas entered Judgment against Defendant in January 2011 for one count of possession with intent to distribute 167.97 kilograms of marijuana.  D.E.1-3.  Defendant was sentenced to 137 months of imprisonment followed by ten years of supervised release, but this was later amended down to 91 months' imprisonment.  D.E. 1-3, 1-4.  Defendant was first released on April 14, 2017.  On May 9, 2017, Perez was referred to Cumberland River Behavioral Health, in Hyden, Kentucky, for outpatient substance abuse counseling; he successfully completed the program on May 11, 2018.  Defendant's supervision was transferred to this District in September 2020.  D.E. 1.

On April 12, 2022, the United States Probation Office ("USPO") initiated revocation proceedings after Defendant produced a urine specimen that tested positive for methamphetamine on instant testing.  Defendant denied any drug use, but lab results were also positive.  Defendant ultimately admitted unauthorized controlled substance use and committing

the crime of methamphetamine possession. Both parties recommended penalties below Defendant's Guidelines Range of 21 to 27 months. D.E. 11. His release was revoked, and he was sentenced to twelve months and a day of incarceration, to be followed by two years of supervision. D.E. 14. Defendant was released again on February 17, 2023.

## II.

On March 5, 2024, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges two violations. According to the Report, "On March 5, 2024, Perez reported to the United States Probation Office. Prior to submitting a urine sample, Perez admitted to having used methamphetamine. A urine sample confirmed Perez's use of methamphetamine on the instant testing device. He signed a written admission for the use of methamphetamine." According to the attached admission form, Defendant used meth four or five days prior to the urine test.

Based on these facts, Violation #1 charges a violation of the condition that Defendant "shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician." This is a Grade C violation.

Violation #2 charges a violation of the condition that Defendant must not commit another federal, state, or local crime and the condition that he not unlawfully possess a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's use and possession of methamphetamine, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

Defendant was arrested and Judge Atkins conducted an initial appearance pursuant to Rule 32.1 on March 12, 2024. D.E. 19. The Court set a final hearing following a knowing,

voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for interim detention; Defendant did not request release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court remanded Defendant to the custody of the United States Marshal. *Id.*

At the final hearing on March 15, 2024, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 22. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation as described in the Report. Consistent with his signed admission, he acknowledged he had used methamphetamine. The United States thus established Violations #1 and #2 under the standard of section 3583(e).

### III.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to possession with intent to distribute 100 kilograms or more of marijuana, a Class B felony. *See* 21 U.S.C. § 846. Such a conviction carries a three-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would

qualify as a Grade C violation with respect to Violation #1 and a Grade B violation for Violation #2. Given Defendant's criminal history category of VI (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is 21 to 27 months. USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's drug trafficking conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

### IV.

At the final hearing, the government recommended a bottom-Guidelines penalty of 21 months' incarceration, to be followed by a year on supervision. The defense requested a below-Guidelines eighteen-month penalty, with no further supervision to follow.

The government noted that Defendant had been compliant on supervision for five years on his first release term, and then for one year on his second term. Defendant had also respected his probation officer enough to admit having used methamphetamine even before the instant test was done. These facts were credited as mitigating.

The government did not recommend that Defendant be taken off supervision. The prosecutor explained that, although Defendant's criminal history is old, it is "intense." Prior to his federal charges, Defendant had committed a litany of serious crimes, including violent crimes. He is a "career offender" under the Guidelines with a criminal history category of VI. This means that the "capacity to cause great danger" is still there. The government was

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

concerned that meth use could "tear down the walls in [Defendant's] mind" that enable him to conform to the law. Nevertheless, the government credited the report of both defense counsel and the probation officer that Defendant has changed. Thus, according to the government, one year would provide adequate protection to the public.

The defense stressed that Defendant had been very "forthcoming" about his meth use and "took responsibility on his own." Defendant had done well for a year and passed all drug tests. He had worked part of that time and had become a father figure to his young children. In short, Defendant, at age 53, is a different man from the one encountered in the PSR. The "dangerous" part of his life is behind him. He has had a total of six years "on paper" with no violence.

The defense conceded that this is a second revocation. Defendant has a "drug issue," and the defense was skeptical further supervision could have any impact on that issue. The defense requested that Defendant be housed close to home (specifically Lexington) to facilitate visits from his children.

Defendant addressed the Court and said he wants to get home to his kids.

### V.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance. Subsection 3583(d) provides an alternative to revocation and

imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for treatment as an alternative to incarceration.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant led Sheriff's Deputies on a high-speed chase while transporting 33 bundles of marijuana in his truck. At the time, he was a daily user of marijuana and cocaine. There is not much connection between the revocation conduct and the egregious circumstances of the underlying offense.

The Court next considers Defendant's history and characteristics and the need to deter criminal conduct and protect the public. Defendant has a criminal history category of VI, which drives his high Guidelines Range. Defendant's history suggests he has the potential to pose a risk of danger to the public. But that criminal history is dated and his life since conviction has been more peaceful. As the Court noted last time, Defendant is not the same person who was sentenced in 2011.

Another factor focuses on opportunities for education and treatment. Defendant has received drug addiction treatment in the past. The Court hoped that his methamphetamine use that resulted in the first revocation was "a fluke." But now he has used methamphetamine again. Neither side argued for additional treatment.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Last time, Defendant's breach of trust was aggravated by his initial dishonesty. This time, Defendant admitted his meth use even before the urine test. The Court also noted last time that meth was a new drug for Defendant. It is troubling that he has returned to meth despite the Court's admonishment in 2022. So, although he was honest this time, this is his second revocation and his sentence was lenient last time. The trust breach remains too severe to support a below-Guidelines penalty.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)). The Court here cannot latch onto an adequate reason to deviate from the Guidelines Range.

Due to his criminal history category, Defendant's recommended bottom-Guidelines sentence of 21 months is a severe penalty for a single meth positive. It is sufficient to protect the public. Given the length of the recommended sentence and the six years Defendant has already spent on supervision, further supervised release is not warranted. Defendant has the capacity to do well. He has a weakness for drugs, but he also has a motivation now to be a good father and put his past behind him. Further supervision cannot be expected to significantly alter these circumstances.

## VI.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty both violations.

2. Revocation with a term of imprisonment of 21 months, with no additional supervision to follow.

3. That Defendant be designated to prison in Lexington or the closest facility possible to his home.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Wier's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 19th day of March, 2024.

Signed By:
**Hanly A. Ingram**
United States Magistrate Judge